**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Youso and Michelle Youso,<br><br>Plaintiffs,<br><br>vs.<br><br>Pharmacists Mutual Insurance Company,<br><br>Defendant. | No. CV-11-8057-PCT-NVW<br><br>**ORDER** |

Before the Court is Defendant Pharmacists Mutual Insurance Company's Motion for Summary Judgment (Doc. 36).

**I.   LEGAL STANDARD**

Summary judgment is proper if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and show there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

## II. PLAINTIFFS' OBJECTIONS TO DEFENDANT'S STATEMENT OF FACTS AND DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF FACTS

### A. Legal Standard

The Local Rules require that any party filing a motion for summary judgment file a statement, separate from the motion, and memorandum of law that sets forth each material fact on which the party relies in support of the motion. LRCiv. 56.1(a). "Each material fact in the separate statement must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Only material facts should be included in the separate statement of facts; other undisputed facts that provide context may be included in the memorandum of law. *Id.*

Any party opposing a motion for summary judgment must file a separate controverting statement of facts that sets forth:

> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The moving party may file a reply memorandum, but the Local Rules do not authorize filing a separate statement responding to the nonmoving party's controverting statement of facts. *See* LRCiv 56.1(d). The moving party may include its objections to the nonmoving party's controverting statement of facts in its reply memorandum. The moving party would need to seek and obtain leave to file another separate statement. If such leave were granted, the nonmoving party would be granted opportunity to respond.

**B.     Rulings**

First, Defendant Pharmacists Mutual Insurance Company's Response to Plaintiff's Supplemental Statement of Facts (Doc. 44), which is separate from its reply memorandum (Doc. 43), is not permitted under the Local Rules. The vast majority of Defendant's responses to Plaintiffs' Supplemental Statement of Facts are that it admits that the witness gave the testimony contained in the deposition transcript and objects to Plaintiffs' characterization of the testimony and/or the fact's relevance. To the extent Plaintiffs have provided the relevant portions of transcripts cited, the transcript speaks for itself. Any factual assertions by either side that are not supported by admissible evidence in the record or that lack relevance will not be considered. Therefore, Defendant Pharmacists Mutual Insurance Company's Response to Plaintiff's Supplemental Statement of Facts (Doc. 44) will be stricken and not considered in deciding the Motion for Summary Judgment.

Second, Plaintiffs' response to Defendant's separate statement of facts in support of its motion for summary judgment "admits," *i.e.*, does not dispute, all but 11 of 78 of Defendant's factual assertions. Four of the "denials" dispute the fact asserted, but do not refer to a specific admissible portion of the record that supports Plaintiffs' position.

Seven of Plaintiffs' "denials" include evidentiary objections. The objections to paragraphs 39, 40, 42, 43, and 45 for lack of foundation are overruled. The hearsay objections to paragraphs 39, 40, 41, 43, 44, and 45 are sustained to the extent the paragraphs assert the truth of statements made within correspondence attached as Exhibits 11 and 12 to the Declaration of Kirk Benson (Doc. 38). However, Mr. Benson's declaration asserting that he received the attached correspondence, including specific bids for repairing Plaintiffs' residence, is admissible.

**III.   UNDISPUTED FACTS**

In early 2007, Plaintiffs finished building a house in Lake Havasu City, Arizona (the "House"). While living in the House, they built another house in Lake Havasu City and began moving some of their personal property to their new house in the fall of 2009.

On November 27, 2009, the day after Thanksgiving, a gas grill malfunctioned, resulting in a fire that totally burned the House. At the time of the fire, Plaintiffs did not rent any part of the House to others and had not made any attempt to rent the House to others. After the fire, Plaintiffs removed more of their personal property from the House. For approximately one month after the fire, Plaintiffs lived in a friend's house. By early January 2010, Plaintiffs had moved into their new house. To date, Plaintiffs have not rebuilt the damaged House.

When Plaintiffs decided to build the House, they contacted Defendant regarding insurance coverage for the House. At that time, they already had a renter's policy with Defendant. Defendant provided Plaintiffs with a questionnaire asking them for information regarding the House so that Defendant could prepare a quote for insurance coverage. Based on the information provided by Plaintiffs, Defendant used computer software to estimate the cost of reconstructing the House and removing debris to be $281,203 and provided Plaintiffs with a quote for insurance coverage for the House.

Plaintiffs had borrowed funds to construct the House, and their lender advised Defendant that the minimum amount of insurance it required was $327,000. In response, Defendant revised its quote to reflect a dwelling limit of $273,000, which met the loan requirement of $327,000 because Defendant's policy contained a provision that would increase the coverage limit shown in the declarations by 20% if certain conditions were met. Plaintiffs purchased policy number HO 0089893 00 from Defendant, which provided coverage for the period February 9, 2007, to February 9, 2008. The policy was renewed for the period February 9, 2008, to February 9, 2009 (as policy number HO 0089893 01), and again for the period February 9, 2009, to February 9, 2010 (as policy number HO 0089893 02).

The policy in effect at the time of the fire (policy number HO 0089893 02) provided the following coverage limits: (A) Residence $305,021.14; (B) Related Structures on the Premises $29,528; (C) Personal Property $206,694; and (D) Loss of Use $88,583. If certain conditions were met, the Coverage A limit would be increased to

$381,276.14, and the policy would provide coverage for loss to the House, including debris removal, of $400,339.95.

The policy stated that it covered "the residence on the 'described location.'" It defined "described location" as the house where Plaintiffs reside. It defined "insured premises" as the "described location" and that part of any other premises used by Plaintiffs as a residence and shown on the policy as an "insured premises." Regarding loss of rent, the policy stated it would pay for the fair rental value of "that part of the 'described location' rented or held for rental" by Plaintiffs if it were made unfit for use as a residence by a covered loss. It would "pay only for the period of time reasonably required to repair or replace the part of the 'described location' rented or held for rental to others."

The policy also stated that Defendant would pay for the necessary and reasonable increase in living costs Plaintiffs incurred to maintain their normal standard of living if the part of the "described location" they occupied was made unfit for use as a residence by a covered loss, but only for the time reasonably required to make it fit for use or for the time reasonably required for permanent relocation. The policy further stated that coverage for related private structures included unattached structures, fences, driveways, sidewalks, and other permanently installed outdoor fixtures.

Upon receiving notice of the fire, Defendant assigned an employee to investigate the loss and handle the claim. On Saturday, November 28, 2009, the day after the fire, Defendant made arrangements to issue a $10,000 advance payment to Plaintiffs and to obtain a rental car for their use because their three cars had been stored in the garage during the fire and were damaged. Defendant immediately retained an independent adjuster to investigate the fire loss and arranged to have a fence installed around the property. Defendant retained a cause-and-origin investigator whose initial assessment indicated that the source of the fire was a gas grill. Defendant notified Plaintiffs not to enter the House or remove items from the House until the investigation was completed.

By December 14, 2009, Defendant reached agreement with Plaintiffs to pay a total of $121,626 for the loss to their three vehicles.

On December 21, 2009, Defendant sent a reservation of rights letter to Plaintiffs. On December 31, 2009, Defendant was notified that Plaintiffs had retained a public adjuster. In January and February 2010, Defendant obtained bids from multiple contractors to repair the House. One of the contractors agreed to do the work for the amount of the insurance limit ($400,339.95). Another provided a not-to-exceed bid of $408,670.62. On February 2, 2010, and again on February 26, 2010, Defendant requested information to pay off the mortgage of the House under a reservation of rights. On February 19, 2010, Defendant issued a second advance payment of $10,000 to Plaintiffs.

On May 14, 2010, Defendant issued payment for personal property loss, based on its determination that the actual cash value of personal property loss was $132,181.32. On May 14, 2010, Defendant also issued payment of $1,831.38 for personal property inside the vehicles and payment of $400,340, the policy limit for structure loss and debris removal. On December 15, 2010, Defendant paid Plaintiffs $3,727.84 for additional living expenses. On April 13, 2011, Defendant issued payment of $1,000 to correct an earlier mathematical error.

## IV. ANALYSIS

### A. Count One: Negligence

The Complaint alleges that Defendant had a duty "to reasonably, accurately and fairly assess and determine the amount and extent of insurance coverage to be provided to Plaintiffs such that Plaintiffs could, in the event of loss, adequately and reasonably replace their residence with a structure of like kind and quality." At least one experienced contractor agreed to repair the House for the policy limit. Therefore, the insurance coverage Defendant sold to Plaintiffs was sufficient to repair the House, and if Defendant owed any duty to Plaintiffs to advise them that they should purchase more coverage, it was not breached.

### B.     Count Two:  Breach of Contract

The Complaint alleges that Defendant "breached the contact of insurance between itself and Plaintiffs by failing to timely and fairly indemnify or compensate Plaintiffs for their covered losses pursuant to the insurance policy, including payment for the structural loss, replacement of personal property, payment for loss of use, and payment of additional living expenses."

Regarding Coverage A, Plaintiffs do not dispute that Defendant paid the structural policy limit, which was expanded by 20% for replacement costs, even though Plaintiffs did not actually replace the structure.  They contend that the May 14, 2010 payment was untimely because the bids upon which the payment was made were submitted in February 2010.[1]  Three months from bids to payment is not unreasonable, especially during the period when Defendant was seeking information to pay off Plaintiffs' mortgage and considering that the payment was for replacement costs that were never incurred.

Regarding Coverage B, Plaintiffs contend that Defendant should have paid an additional 10% for "related structures."  But Plaintiffs agree with Defendant that the stone retaining wall existed, was not damaged, and did not need repair.

Regarding Coverage C, Plaintiffs have submitted no evidence that they were entitled to more than what they were paid for loss of personal property.

Regarding Coverage D, Plaintiffs have submitted no evidence that they were entitled to more than what they were paid for additional living expense or loss of rent. They do not dispute that Defendant reimbursed them for covered expenses through March 1, 2010, even though they had moved into their new home by early January 2010. They also do not dispute that they did not rent or hold out for rent any portion of the House.

---

[1] Plaintiffs refer to a letter dated January 12, 2010, but the exhibit they reference is dated January 12, **2011**, and describes a bid Defendant received in February 2010.

- 7 -

Plaintiffs contend, however, that they were entitled to be paid for rental income they would have received if they had been able to rent the House beginning January 1, 2010, when they anticipated moving into their new home. They fail to acknowledge that the insurance policy they purchased for the House required that they reside in the House and it only provided loss of rent coverage if they occupied part of the House and rented part of it to others. If they had moved to their new home and no longer resided in the House, the policy likely would not have provided any coverage, much less loss of rent coverage.

On the undisputed material facts, therefore, Defendant did not breach its contract with Plaintiffs.

### C. Count Three: Bad Faith

The Complaint alleges that Defendant breached the covenant of good faith and fair dealing, and acted in bad faith, by failing to timely acknowledge the significantly inadequate coverage limits on Plaintiffs' structural coverage and summarily tendering the structural policy limits to Plaintiffs and by failing to timely and reasonably compensate Plaintiffs for their personal property losses, loss of use damages, and additional living expenses. It further alleges bad faith by knowingly withholding material and relevant information from Plaintiffs concerning the facts surrounding their claim.

As found above, the insurance coverage provided to Plaintiffs was adequate to repair the House, and Defendant timely and reasonably paid Plaintiffs what they were entitled to under their insurance policy. Thus, there is no basis for finding Defendant acted in bad faith or that Plaintiffs are entitled to punitive damages.

IT IS THEREFORE ORDERED that Defendant Pharmacists Mutual Insurance Company's Response to Plaintiff's Supplemental Statement of Facts (Doc. 44) is stricken. The Clerk shall leave the imaged document in the record.

IT IS FURTHER ORDERED that Defendant Pharmacists Mutual Insurance Company's Motion for Summary Judgment (Doc. 36) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and against Plaintiffs and that Plaintiffs take nothing.  The Clerk shall terminate this case.

Dated this 29th day of January, 2013.

*Neil V. Wake*
Neil V. Wake
United States District Judge